# WINDHAM COUNTY.

## February Term, 1839.

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
" STEPHEN ROYCE, ⎫
" JACOB COLLAMER, ⎬ *Assistant Justices.*
" ISAAC F. REDFIELD, ⎭

## State Treasurer *v.* Rufus Rice and Barzillai Burgess.

A justice of the peace has authority to issue a warrant to apprehend offenders and commit them for trial.

A private prosecutor may prefer a complaint against any one for a high crime or misdemeanor, and, on such complaint, a justice of the peace may apprehend and bind over, or commit for trial. But, unless the private prosecutor has a pecuniary interest in the trial and conviction of the offender, the bond must be taken to the state alone, and the offender must be prosecuted by the state's attorney.

A private prosecutor has no further control of the prosecution, in such case, after the proceeding of the magistrate.

When a bond for the apearance of the person charged was taken to the prosecutor and to the treasurer of the state, it was held there could be no recovery thereon.

This was a *scire facias* on a recognizance. The facts, as alleged in the declaration, were, that on the 12th day of March, 1836, Daniel Rounds presented his complaint to a justice of the peace for the county of Windham, against Rufus Rice, one of the defendants in this case, charging the latter with having forged a note, purporting to have been

WINDHAM, *February,* 1839.

State Treasurer

*v.*

Rice and Burgess.

signed by one Willard Dean, since deceased, of whose estate the complainant was a creditor. The complaint was duly sworn to. On that complaint the justice of the peace issued his warrant, against the said Rice, having first taken a recognizance to ensure to said Rice the costs of prosecution, but no recognizance was taken to the state or town. The respondent was arrested upon the warrant, and, after inquiry by the said justice, was ordered to enter into a recognizance with sureties, to the treasurer of the state and to the complainant, in the sum of \$600, for his appearance at the next term of Windham county court. The respondent, having failed to enter into such recognizance, was committed to jail, and afterwards, on application to a judge of the county court, was admitted to bail by said judge, and was recognized as principal and the defendant, Burgess, as surety, in the sum of \$300, as well to the treasurer of the state as to the said complainant, with the usual condition that the respondent appear, &c. At the September term of said county court, 1836, an indictment was found against said Rice and, at the September term 1837, the bonds were called and the recognizance became forfeited, and the court adjudged that said recognizance might be prosecuted by the state treasurer. This *scire facias* was brought upon that recognizance. The defendants demurred to the plaintiff's declaration and the county court adjudged said declaration sufficient ;—To which the defendants excepted.

*W. C. Bradley*, in support of the demurrer.

The recognizance in this case having been entered into for the purpose of avoiding an imprisonment under a warrant made by a justice of the peace on a private complaint—the defendants contend that the warrant, and therefore the imprisonment, had no legal authority ; for

I. It is not given by the common law, because, formerly, such warrant must proceed from the court having jurisdiction to try the offence. Hawk. Pl. Cr. B. II. c. 13. §16. In 14 Hen. 8., it was said by Fitzherbert that " a *justice* cannot make a warrant to take one for *felony* before he is indicted," to which it is added that the whole Court agreed, [14. H. 8. fol. 16.] and Lord Coke says, that, in his time, this resolution of the judges was held to be good law. Sergeant Hawkins, indeed, declares that when he wrote, the long

practice of the justices seemed to have altered the law,—
but that they claimed the power rather by connivance than
any express warrant of law. Hawk. ub. supra. §16.

II. It is, at least, in cases like the present, not given by
statute, for it is to be observed that there are two classes of
prosecutions contemplated,—1st. for those offences to which
infamous and heavy punishments are annexed, such as those
contained in the act against high crimes, &c., 2nd. for smal-
ler offences, where private interests are affected or directly
enlisted,—such, among others, as introducing the small pox or
selectmen failing to notify the same, in which case the fine
or forfeiture is to be recovered by information or action and
belong one half to the prosecutor. Stat. 494-5.

So also the Stat. p. 281., where, for demolishing sign posts
and the like, the fine is to be recovered by information or
indictment with costs of suit, and if there is a private prose-
cutor, he to have half thereof—and whatever party might be
injured, he to recover, besides, treble damages. These statutes,
which, as well as some others, directly countenance a pri-
vate prosecution, being followed so soon by that relating to
fines and recognizances, may be presumed to have been in
contemplation of the legislature, not only in passing the 7th
and 8th sections of the latter statute, but also, when revising
the same in 1800—and probably in 1801. Stat. 287. No. 2

But in cases involving life, liberty and reputation, the pe-
cuniary interest in procuring conviction (arising from the
indispensable recognizance) which might be salutary in mi-
nor cases, would be often most pernicious here, as the state
has more concern in protecting the innocent than in punish-
ing the guilty. Hence by the act of 1801, Stat. 421, the
grand jurors of towns, who are constituted informing officers,
are to prosecute only offences "which they, in their con-
science, shall think the design of the law and the good of
community require," evidently treating the power not as a
mere question of costs, but as a public trust, to be exercised
under the official oath of impartiality, checked by a con-
scientious view to the public good. This trust, in so far as
private prosecutions are allowed, must be surrendered, the
check lost, and the power lie open to be wielded by every
one able and willing to meet the expense. Besides, the im-
plication of such a power (by which alone it can be assumed)

is not required, *in relation to high crimes*, by any public necessity or convenience, since the act of 1819 has made every town grand juror an informing officer, throughout his whole county. Sec Stat. 264, which, being made a part of the act respecting such crimes, seems to point out the sole method by which prosecutions under it are to take place. Com. Stat's. from 1779 to 1801, *passim*, and also *Brackett v. State*, 2 Tyl. R. 152, with Stat's. of 1801 and 1819.

*J. Elliott*, state's attorney, and *D. L. Putnam*, contra,

All the proceedings, in this case, have been conformable to the spirit, and even to the letter of the statute. To decide that the recognizance is void, would render the statute inoperative in every case in which it was intended to operate upon prosecutions by any person "other than an informing officer." The statute is entitled, "an act, relating to fines, forfeitures, penalties and costs, and directing the mode of taking recognizances, in certain cases." Vol. 1. p. 285. The 7th section authorizes "any person other than an informing officer to become a prosecutor for the breach of any penal law, or for any other offence." And this recognizance was taken agreeably to the very letter of the statute.

At common law, every man is, of common right, entitled to prefer an accusation against a party whom he suspects to be guilty of an offence.

The persons thus legally entitled are in general bound by the strongest obligations, both of reason and law, to exert that right.

This moral obligation is, in many cases, enforced by the laws themselves, and in many more is encouraged by their sanction.

There are also many instances in which the law has rendered it either necessary or advantageous to the party, immediately injured, to prosecute, as it affects his own private interests; wisely interweaving his own advantage with the public benefit. 1 Chitty's Criminal Law. 1. 2, 3, 4.

The opinion of the court was delivered by

WILLIAMS, C. J.—It is evident that the proceedings in this case were had on the supposition that they were founded on, and to be regulated by the 7th and 8th sections of the

statute, relating to fines, costs and recognizances, and the Windham, February, 1839. argument has raised an inquiry as to the powers and duties of justices of the peace, and private prosecutors. There is State Treasurer v. Rice and Burgess. a striking and important difference in prosecutions for criminal offences here and in England. In this state, prosecutions for offences before the county court, which has original and exclusive jurisdiction of most offences, are conducted by a public officer appointed for that purpose, and responsible for the manner in which he discharges his duty. In England they are usually instituted and conducted by private prosecutors, and, frequently, are only for the purpose of obtaining redress of a private injury. In many cases the civil action is suspended until the prosecution for the offence is terminated. Although private prosecutions are here recognized in some cases, yet they are unusual, and are not looked upon in a favorable view, and it is rare that the attention of the court has been called to proceedings under the sections of the statute before mentioned, or to the authority of magistrates in such prosecutions. The counsel for the defendant, in an argument exhibiting much research, has questioned the authority of a magistrate to issue the warrant, or make the commitment set forth in the writ, and contended that the imprisonment was, on that account, illegal, and the recognizance void. But the authority of a justice of the peace in England to arrest or grant a warrant for felony seems to be established by " long, constant, universal and uncontrolled practice, and is now undisputed." In this state the authority to issue warrants for crimes, and to commit for want of bail, has always been recognized as existing, and is expressly given by statute. By the second section of the justice act, justices are empowered to cause to be apprehended and committed to prison, all criminal offenders, the enormity of whose misdemeanor surpasses their power to try. Nearly in the same words was the statute of 1787, and the laws passed in 1779, gave them a similar power. The proceedings before justices are usually the incipient step preparatory to a prosecution.

The constitution forbids the issuing of any warrant without oath or affirmation first made, and hence has arisen the practice of making a regular complaint in writing, pre-

WINDHAM,
February,
1839.

State Treasu-
rer
*v.*
Rice and Bur-
gess.

viously to issuing a warrant, which goes out with the warrant. The 10th section of the justice act makes a provision that the complainant shall give security by way of recognizance unless he is an informing officer. It is doubtful who were informing officers at the time of passing that statute. By the decision in *Bracket* v. *The State,* 2 Tyler, R. 152,it appears that from the year 1797 to 1801, grandjurors were not general informing officers. The statute of 1801 made them so, and, by another statute, state's attorneys are constituted informing officers for certain offences. The right of a private person, to complain and prosecute for matters of a criminal nature, has always been provided for. The laws of 1779 subjected the complainant to the payment of cost, when the complaint was not supported, unless he was a town or county informing officer. The same provision was reenacted in the laws of 1787, and the 10th section of the present justice act, enacted in 1797, before mentioned, recognizes such right. There can be no question, therefore, that any individual may now make a complaint for a crime or misdemeanor, for the purpose of having an examination and commitment, taking the oath required by the constitution and giving the surety required by the 10th section of the justice act. If, upon this examination, the justice orders the person, complained of, to give securtiy for his appearance, or commits him for trial, the prosecution then becomes public, and must be conducted by the officer appointed for that purpose, unless it be for some offence where the complainant has an interest in the prosecution and conviction of the offender.

The proceedings here, on the complaint of Mr. Rounds, appear to us to be regular as to the complaint, warrant and examination.

By the order of the justice and the act of the judge of the county court in taking bail, it seems they intended to be governed by the 7th and 8th sections of the statute, in relation to fines, costs and recognizances, and it becomes necessary to ascertain in what cases those sections are applicable. At the time of passing that statute, there were several cases where individuals or private persons had an interest in prosecutions for crimes, and in the trial and conviction of the offenders. In a prosecution for theft, the party, from whom the goods, &c. were stolen, might enter as prosecutor, and

WINDHAM,
February,
1839.

State Treasu-
rer
v.
Rice and Bur-
gess.

was entitled to treble damages, and the offender might be assigned in service. In prosecutions for horse stealing, the party was also entitled to an award of treble damages and an assignment of the offender in service. In prosecutions for forgery and perjury, the party aggrieved might recover treble damages, on the conviction of the offender. Whenever a person had an interest in the conviction, he might become a private prosecutor, and it would seem that he might, after a prosecution commenced by information or indictment, become so, by complying with the requirements of the statute ; and, in such case, he was holden for costs, and, if the court directed, he was to enter into a recognizance, both to the treasurer and the person complained of. When he thus became a prosecutor, the bail for the appearance was to be taken as well to the treasurer as to the complainant. There are but few, if any, cases now remaining, where the person, injured by a crime, can be said to have a pecuniary interest in the prosecution, as our statutes have been revised since 1797. The provisions in relation to prosecuting for offences by a private prosecutor, where the offence is to be prosecuted by indictment, and to giving and taking security for cost, are only applicable to those cases where the individuals have a pecuniary interest in the conviction of the offender. A prosecution for any of the offences, enumerated in the statute in relation to high crimes and misdemeanors, is not one, where any other than a public officer can be the prosecutor after the commitment of the offender for trial, so as to be holden for, or to receive cost. The proceeding of the justice after the examination, in ordering the defendant to become recognized to the prosecutor, as well as to the treasurer, and the recognizance taken by the judge of the county court on which this *scire facias* is brought, were both irregular, as such recognizance should only have been to the treasurer. This is all which it becomes necessary to decide in this case, although upon another ground, it appears to me, the plaintiff is not entitled to the remedy he asks for. If the recognizance was regular and legally taken, the party, to whom it was given, was the treasurer and the prosecutor, jointly, and, although the

State Treasu-
rer
*v.*
Rice and Bur-
gess.

court should direct that either or both might prosecute, yet the parties could not be changed, and the remedy must be pursued in the names of those to whom the surety was given. The other ground, however, is the one on which the court decides the case.

The judgment of the county court is reversed, and let judgment be entered, that the writ and declaration of the plaintiff is insufficient.